## HASKELL and others *vs.* WRIGHT.

1. By deed, H. dedicated certain lands for the purposes of a private pleasure ground, in trust, that the trustees should "forever thereafter suffer and permit Llewellyn Park and its appurtenances, with its several roads or avenues, and ways or rights of way, as laid down on the said map, to be fully and at all times used and enjoyed *as a place of resort and recreation,* by the several persons," &c. The deed provided that certain managers should have the exclusive control of the park for the prescribing and enforcement of rules and regulations for the use and enjoyment thereof. Purchasers of certain lots outside of the park, belonging to H., were to be permitted to use and enjoy said park, and said roads or avenues, and ways or rights of way, for the like purposes, and upon the same terms, &c. H. conveyed a lot to W., with this clause: "Also as an easement appurtenant thereto, the right to use, frequent and enjoy a certain private pleasure ground in the vicinity thereof known as Llewellyn Park *for the purposes,* and upon the terms, charges, restrictions, and regulations set forth in the deed of conveyance, &c., for the said park, made by said H. to said trustees." W. therein covenanted that he, his heirs or assigns, would not erect or permit upon the premises any hotel, slaughter-house' steam engine, &c., or any other place or building for the accommodation of any other trade or business, dangerous or offensive to the neighboring inhabitants. Upon bill for injunction by H. and others, *held*—

1. That the blasting or breaking stone by W. on his lot was a business for profit or for sale of the stone, was a violation of his covenant, and must be enjoined; also, the use of the avenues of the park for carting away the stone from his lot for the purpose of selling them. 2. The removal of loose stone or rock on the lot, that do not require breaking, or grading the surface of the lot so much as is necessary to prepare it for building, are not violations of the covenant, and will not be enjoined. Nor will the sale of the stone carried off in good faith for that purpose be

restrained.   3. The power given to the managers of the park, to prescribe and enforce rules and regulations for the enjoyment of it, is sufficient to protect those entitled to the enjoyment of it and its avenues, from injury by those claiming the right to use the avenues for carting building materials, or carrying surplus earth and stone away from the lots.

2. When the deed under which a purchaser holds title grants him the use of the avenues or roads in a private pleasure ground dedicated by the vendor to certain uses, subject to the restrictions and regulations contained in the deed of dedication, the purchaser will be restrained to the uses prescribed by the dedication.

3. When a conveyance provides a way of access for ordinary purposes to the lot conveyed, no way of necessity will arise, although that way is not sufficient for all purposes.

4. An acceptance of a conveyance, with a restricted right of way to the lot conveyed, bars the grantee from claiming a larger way as a necessity.

Argued on final hearing, upon bill, answer, and proofs.

*Mr. C. Parker* and *Mr. Blake,* for complainants.

*Mr. McCarter* and *Mr. J. W. Field,* for defendant.

THE CHANCELLOR.

The defendant has title to a lot in a certain tract in Orange, enclosed within four roads, and generally known as Llewellyn Park, which also contains a parcel of about fifty acres, conveyed to trustees by Llewellyn Haskell, and which alone is properly denominated Llewellyn Park.   The defendant's lot adjoins Llewellyn Park proper, and is bounded by Mountain avenue, a road which is part of that park.

The defendant's lot is rocky; a great part of it is solid rock.   Its depth is about six hundred feet, and it rises in the rear to an elevation of about one hundred and sixty feet above the front of it, on Mountain avenue.   The defendant is engaged in the business of constructing roads of stone on the plan known as the McAdam or Telfer pavements, composed of broken or crushed stone.   He began breaking up stone on this lot for this purpose, and erected a steam engine on it for crushing this stone, and other purposes.   He carried

the stone thus broken and prepared from his lot, over the avenues in the park, to the public highway. The steam engine and crusher were removed after the service of the injunction in this suit, but he still continues to cart away the loose stone lying on his lot, over certain avenues in the park designated for that purpose, in the order modifying the injunction.

The complainants insist that the defendant is not entitled to maintain any steam engine on his lot, or to carry on the business of breaking or crushing stone there, or to use the avenues of the park for carting the stone upon his lot out of the plot enclosed by the four roads, for the purpose of selling or disposing of them, or in fact for any other purpose. They insist that the deed under which the defendant claims title prohibits the erection of any steam engine, or the carrying on any offensive business, upon the lot, and that the park proper (which I shall call the park to distinguish it from the plot enclosed by the four roads, which I shall call the plot,) was conveyed to trustees upon trusts inconsistent with the use of the avenues in the park for such purpose as carting away large quantities of stone for sale or other purposes.

Llewellyn Haskell, on the 28th of February, 1857, owned the park, and also the plot, or so much of it as relates to the matters in question in this suit. He owned, besides, a distinct lot lying to the north of it, called Eagle Rock. The park, besides grounds and groves to be laid out and improved for ornament and pleasure, consisted of avenues laid out on the map of the park, intersecting and bounding the grounds, and branching out from them and intersecting and surrounding the plot. The grounds and avenues of the park altogether were fifty acres; the avenues varied in width from twelve to thirty feet.

On the 28th of February, 1857, Haskell conveyed the park to three trustees, by deed, executed by himself and wife and the three trustees. This deed recites that Haskell proposes to devote this tract to the purposes of a private pleasure ground, under the name of Llewellyn Park, which should at

all times thereafter be used and enjoyed by such persons as then were or should become owners of certain other lands. The trusts declared in the deed, so far as they affect this controversy, were : That the trustees should "forever thereafter suffer and permit Llewellyn Park and its appurtenances, with its several roads or avenues, and ways or rights of way, as laid down on the said map, to be freely and at all times used and enjoyed *as a place of resort and recreation* by the several persons and parties thereinafter mentioned, and their respective families, tenants, agents, and servants, that is to say : 1st. The parties of the first part, their heirs and assigns. 2d. Charles Harrison and his heirs. 3d. Margaret Williams, her heirs and assigns. 4th. Certain purchasers from Charles Harrison.

And further, that the trustees should permit Haskell, and every person or persons who might become the owner or owners of the tract known as Eagle rock, to pass and repass from the Valley road to the Eagle rock road at all times, and *for all purposes,* over and through said Llewellyn Park, by means of its several roads and ways, or avenues and ways, as laid down on said map.

The deed further provided that Haskell, and other persons owning land in said plot, might, on the second Monday in January in each year, choose managers, (not less than three or more than nine,) who should have the exclusive control of the park for the enclosure, planting, maintenance, and decoration thereof, and for the prescribing and enforcement of rules and regulations for the use and enjoyment thereof.

It was also declared that persons who should purchase any villa sites out of any lands that Haskell should thereafter acquire in said plot, should be permitted to use and enjoy the said Llewellyn Park, and said roads or avenues, and ways or rights of way, for the like purposes, and upon the same terms as the persons purchasing sites out of land in the plot then belonging to Haskell. Haskell, who then owned the lot of the defendant, on the first day of January, 1869, conveyed it to J. S. Brown, who conveyed it to M. Mohor, by whom it

was conveyed to the defendant. The deed given by Haskell for this lot contained the usual covenants by the grantor, and in it, as in all other deeds given by him for lots within the plot, this clause was added to the description of the premises granted : "Also, as an easement appurtenant thereto, the right to use, frequent and enjoy, a certain private pleasure ground in the vicinity thereof, known as Llewellyn Park, *for the purposes*, and upon the terms, charges, restrictions, and regulations set forth in the deed of conveyance for the said park, made by said Haskell to the said trustees."

It also contained a covenant by the grantee to Haskell, his heirs and assigns, that the grantee, his heirs or assigns, would not erect or permit upon the premises any hotel, livery stable, slaughter-house, smith shop, forge, furnace, steam engine, foundry, hat factory, tannery, brewery, distillery, or any other place or building for the accommodation of any other trade or business dangerous or offensive to the neighboring inhabitants.

This deed being that under which the defendant has title to his lot, he is bound by the covenant of the grantee, which is one that runs with the land. That clearly restrains him from erecting or permitting a steam engine or stone crusher, as is admitted by his counsel. The covenant is also not to permit on it any place for any business dangerous or offensive to the neighboring inhabitants. The complainants, who besides Haskell and the three trustees of the park, are some of the lot owners in the park, under Haskell, and reside there, contend that blasting stone on this lot is a business which, if not dangerous, is offensive to them, by reason of noise and disturbance, and of the park and its avenues being occupied and traversed by a large number of workmen of the kind engaged in such business, and that this is inconsistent with the purpose to which the park is devoted, and the villa sites in the plot intended.

I think so far as the blasting or breaking stone is carried on as a business for profit or for sale of the stone, that this comes within the letter and the spirit of the covenant. It

cannot be permitted that the defendant shall quarry out or break up the stone on this lot for sale, down to the grade of the avenue. There is a mass of material there, principally rock, extending six hundred feet from the front to the rear of this lot, for its full width, of the average height of thirty feet. And if the profile in evidence gives the correct surface of the lot for its whole width, a succession of carts within five minutes of each other, with a load of a ton each, working ten hours a day every day in the year, would require seven years to remove this mass from each hundred feet of the width of this lot; and, in the meantime, the occupants of the neighboring lots would be annoyed by the continued noise and bustle and the throng of workmen going to and from their work—both matters peculiarly offensive to the occupants of villa sites in a plot set aside, as this is, for such residences. Quarrying out or breaking up stone here, if done as a business, as it most clearly has been and is done by the defendant, is within the covenant, and must be enjoined and prohibited.

But the defendant claims that this does not prohibit him from removing the loose stone or rock on his lot, that do not require breaking, or from grading down the surface of his lot so far as is necessary to prepare it for building. These are certainly not within the covenant, and so far as the work is carried on for that purpose only, it cannot be restrained by force of that covenant; nor will the fact that he sells or utilizes the stone carried off in good faith for that purpose, make it a business within the meaning of that covenant. But the defendant cannot be permitted, under the pretence that he is clearing off and grading his lot for the purpose of building, to quarry or break stone for the purpose of sale. It may be difficult to tell what part is done for profit or sale, and what part *bona fide* for the purpose of clearing off the lot for building. But he cannot be permitted to buy a lot like this, and level and clear it for the purpose of building, to the continued annoyance of all around him. He will be presumed to have selected and purchased this lot for the purpose of using it with the surface as it then existed, breaking and clearing off

so much of the loose stone as it was necessary to remove for that purpose. This will not come within the prohibition of that covenant. Beyond this he must be enjoined and prohibited by the decree in this suit. And if any dispute arises whether the decree restraining him has been violated, it may be determined by a reference to a master to ascertain, with the assistance of a competent architect and landscape gardener, how much it is necessary to remove.

The complainants also insist that the defendant is not entitled to use the avenues of the park for the purpose of carting away large quantities of the rock upon his premises; that such use destroys the surface of these avenues, and renders them unfit for the purposes for which they are dedicated. These avenues are expressly dedicated to be used as a place of resort and recreation—at least so far as regards owners of lots in the plot. These are the words of the deed of trust. The owner of the Eagle Rock is not entitled to use them as a place of resort and recreation, but only for *passage* from the Eagle Rock road to the Valley road, and he is entitled so to use them "for all purposes whatsoever"—words in contrast with the declared right of the owners of lots in the plot, to use them with the park, for resort and recreation.

The dedication of these avenues in the deed of trust must be held, from the objects of the conveyance as declared on its face, to give the use of these avenues for access to the lots by persons purchasing, and to the inhabitants of houses on these lots the right of using them for all the usual purposes and necessities of such inhabitancy—at least for all not inconsistent with the purpose for which the park and its avenues were dedicated. The use of them for taking to each lot building materials for building houses on it, might be held to be included in the object as shown by the deeds; but if these avenues were used for this in such manner as to destroy the use of the park for the purpose for which it was dedicated, such use should be restrained.

The claim of the defendant that he had a right of way for these purposes, by necessity or by dedication, cannot be sus-

tained. By the provision of the trust deed, he had a right to use the avenue in front of his lot for purposes within its provisions. The deed for his lot refers to the trust deed, and he must be held to have accepted the right of way therein provided, as his way. And when a way is provided which gives access, for ordinary purposes, to the lot granted, no way, of necessity, will arise, although that way is not sufficient for all purposes.

If a rear tenement is conveyed or leased, as is frequently the case, with a right of passage expressed in the deed through an alley-way of four feet wide, it does not give a right to have a way, of necessity, cut through the house or garden on the front of the lot, although the four-foot alley is not sufficient to pass a cart, or for many other purposes for which a way is usually needed. The defendant having accepted the conveyance of this lot, with a restricted right of way, is barred from claiming a larger way as a necessity.

Generally, the sale of a lot fronting upon a road laid down on a map, to which reference is made in the deed, will dedicate to public use that road and the other roads laid out on the map, necessary to give access to some public highway, and will grant to such purchaser a right of way over such road and roads to get to the public highway. But in this case the dedication is not by such implication, but by the map and deed of trust expressly referred to in the conveyance from Haskell, which alone can give support to the dedication. By the trust deed, the title of these lands passed out of Haskell, and took from him the power to make any further dedication of the lands included in it. The defendant's right to use these roads, therefore, must be restricted so as not to interfere with or defeat the purposes for which they were dedicated by the deed of trust.

But the power given to the managers of the park to prescribe and enforce rules and regulations for the enjoyment of it, is sufficient to protect those entitled to the enjoyment of the park and its avenues, from injury by such as claim the right to use the avenues for carting building materials to

their lots, or surplus earth and stone from them out of the park.

They can, by exercise of this power, prohibit the defendant and others from using these avenues to take away from their lots stone or earth from below a certain grade, or beyond an amount that they shall judge proper and necessary, if they think that it will interfere with the enjoyment of rights that others have in the park. They can protect the avenues from injury by directing which shall be used for such purpose, and at what seasons of the year or hours of the day, by prescribing the width of tires on the wheels and the load of each cart or vehicle. Such regulations must be reasonable, and, when made, will be enforced against this defendant, as an express condition of the grant by which he has the right to use these ways for any purpose.

The complainants are therefore entitled to a decree restraining the defendant from carting over any of the avenues in the park any stone taken from his lot for any purpose, except such loose stones as it is necessary to remove for the purpose of fitting his lot for building and occupation. And in taking away such stone, it must be done in conformity to the rules and regulations that are or may be prescribed by the managers of the park.